**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **IGNITION AUTO MARKETING, INC.** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 6:17-CV-260** |
| | § | |
| **TODD BRESNAN,** *et al.* | § | |
| | § | |
| | § | |

---

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Plaintiff's Amended Motion for Temporary Restraining Order (ECF 10), Defendants Todd Bresnan, Jamie Bresnan, and Darrel Young's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (ECF 38) and Defendant XCite, Todd Bresnan, Jamie Bresnan, and Darrel Young's Motion to Dismiss under 12(b)(6) (ECF 39). Having considered the pleadings and oral arguments from the hearing, it is recommended that the Court **GRANT** in part and **DENY** in part Defendants Todd Bresnan, Jamie Bresnan, and Darrel Young's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (ECF 38) and **DENY** Defendant XCite, Todd Bresnan, Jamie Bresnan, and Darrel Young's Motion to Dismiss under 12(b)(6) (ECF 39) and Plaintiff's Amended Motion for Temporary Restraining Order (ECF 10).

## BACKGROUND

Plaintiff Ignition Auto Marketing, Inc. ("Ignition"), filed this lawsuit against Defendants Todd Bresnan, Jamie Bresnan, Darrel Young, Caleb Buckley, Brian Beard and XCite Advertising, Inc. ("XCite") asserting claims for breach of contract, breach of the duty of loyalty, misappropriation of trade secrets, tortious interference with contractual relations, tortious

interference with prospective business relationships, unjust enrichment, and civil conspiracy, as well as claims pursuant to the Defendant Trade Secrets Act, 18 U.S.C. § 1836, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 and RICO, 18 U.S.C. § 1962(c).  In the Complaint, Ignition states that it is a company that licenses car lot service technology that collects, organizes and distributes car dealership inventory information.  It conducts business in eleven states and reportedly has an annual revenue exceeding $2 million.  Ignition asserts that the individual defendants are former employees that had access to its non-public dealership customer list and information concerning sales, marketing, technology and pricing.  As regional account managers and account representatives, Defendants Todd Bresnan and Darrell Young had the greatest access.  Ignition states that its employees enter into nondisclosure, non-solicitation and non-compete agreements as a condition of employment.  They are also allegedly bound by a Confidentiality Agreement and Acceptable Computer Use policy.

Todd Bresnan's employment with Ignition arose out of Ignition's purchase of a business owned by Todd Bresnan, Ideal Lot, on December 1, 2013.  The purchase agreement provided that Ignition would offer employment to Todd Bresnan.  Todd Bresnan completed an Employment Agreement.  Ignition additionally hired Todd Bresnan's employee, Darrell Young, as an account representative.  Todd Bresnan's wife, Jamie Bresnan, was later hired on November 24, 2015 as an account representative.

Ignition alleges that Young used his work email account to transmit pornographic images and solicit sexual contact on two occasions in 2015 and 2016, in violation of the company's internet and computer use policy.  Young then allegedly used his work email on January 24, 2017 to send a business plan, Ignition's customer list, and internal pricing list on a document with XCite's letterhead.  Another email was allegedly sent from Young's Ignition work email on

February 7, 2017, attaching a document on XCite letterhead, with a courtesy copy going to Todd Bresnan.  That document allegedly showed an agreement between Ford of Branford, CT and XCite, even though Ford of Branford was a client of Ignition's at the time.  Young resigned his job with Ignition on February 17, 2017.  Beard and Buckley were also employed by Ignition as account representatives and they reported to Todd Bresnan.  Beard started in 2014 and Buckley started in 2016.

Ignition alleges that the individual defendants conspired with XCite to use Ignition's customer lists, pricing information and other financial information for the benefit of XCite.  Ignition alleges that Defendants misappropriated its protected information to steal clients.  The individual defendants all resigned from Ignition in February 2017.  According to Ignition, over a period of just a few weeks, twenty-one dealership customers terminated their contracts with Ignition and went to XCite.

Shortly after filing the Complaint, Ignition filed a Motion for Temporary Restraining Order (ECF 8), an Amended Motion for Temporary Restraining Order (ECF 9) and another Amended Motion for Temporary Restraining Order (ECF 10).  Ignition states that it is relying on its claims for breach of contract and misappropriation of trade secrets as its basis for seeking injunctive relief.  Ignition alleges that Todd Bresnan breached his employment agreement by funneling confidential information to Young and XCite in violation of the confidentiality and non-disclosure provisions of his employment agreement.  Ignition's motion seeks, among other things, to enjoin the defendants from soliciting its customers, disclosing confidential information, and competing against Ignition's business.  At the hearing, Ignition amended its motion to request a preliminary injunction restraining Todd Bresnan and Darrel Young from servicing accounts that came from Ideal Lot.

In response, Defendants XCite, Todd Bresnan, Jamie Bresnan, and Darrel Young[1] assert that no defendant in this case is subject to a non-compete or non-solicitation agreement. The only actual agreement produced by Ignition is an Employment Agreement signed by Todd Bresnan in December 2013 that expired in December 2014 and was not renewed. By the agreement's terms, the non-compete and non-solicitation provisions would have expired two years later in December 2016. Additionally, even though there is a document titled "Employment Agreement," Defendants assert that they were independent contractors performing photography related services in Connecticut and not employees. They state that they received no employee benefits and they were treated as independent contractors for tax purposes.

Bresnan and Young admit to working for Ignition's competitor, XCite, after the non-compete and non-solicitation provisions expired. They secured new customers, including some of Ignition's customers, for XCite using their customer relationships and experience. Defendants assert that customers chose XCite because it offers a superior product, even though its prices are often higher than Ignition's. Defendants assert that injunctive relief is inappropriate for many reasons. Namely, Ignition is not likely to succeed on the merits because the documents allegedly taken by the individual defendants are either publicly available or easily ascertainable and there is no evidence showing that XCite knew about any wrongful conduct or used Ignition's trade secrets. In addition, Ignition has not established a causal link between the harm allegedly suffered and the alleged misconduct. The harm alleged is not irreparable because it can be compensated with monetary damages. Defendants submit that equity does not favor a preliminary injunction because a preliminary injunction will not result in any hardship for Ignition but will prevent XCite from conducting its business, put the individual defendants out of work and harm XCite's customers.

---

[1] To date, Plaintiff has not effectuated service on Defendants Caleb Buckley and Brian Beard.

Finally, Defendants assert that a preliminary injunction would not serve the public interest because there are no trade secrets at issue and no enforceable contract provisions.

Defendants argue that Ignition has not identified a "trade secret" as contemplated by the Texas Uniform Trade Secrets Act ("TUTSA").  Ignition's customers are auto dealerships, which is an easily ascertainable class of businesses.  A list of auto dealerships in Connecticut is easily generated public information.  In addition, there is no secret regarding which dealerships use Ignition's services because window stickers at the dealerships include Ignition's logo.  According to Defendants, Ignition's argument that its pricing is secret and was misappropriated by Defendants is undercut by the fact that XCite has used a different pricing structure than Ignition for years and it charges higher prices.  Notably, XCite's own employment agreements prohibit its employees from taking or using any competitor's trade secrets while employed by XCite.

Defendants Todd Bresnan, Jamie Bresnan and Darrel Young filed a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (ECF 38).  In their motion, Defendants assert that all acts alleged by Ignition occurred in Connecticut, where they reside.  Defendants argue that they do not have continuous and systematic contacts with Texas.  None of the alleged acts giving rise to Ignition's cause of action occurred in Texas or were directed to Texas.  There is no allegation that trade secrets were stolen or used in Texas.  All defendants performed photography services as independent contractors in Connecticut.  Defendants assert that Ignition has not alleged any facts, other than Ignition's location in Texas, to invoke personal jurisdiction over the individual defendants.  To the extent Ignition asserts that there is specific jurisdiction as to Todd Bresnan because of his Employment Agreement—an agreement that was negotiated and performed outside of Texas—Defendants assert that the agreement expired on December 1, 2014 and included a forum-selection clause selecting the Northern District of Texas or Dallas County state court.

Defendants seek dismissal pursuant to FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction. Alternatively, Defendants assert that the case should be dismissed for improper venue because venue is not proper in the Eastern District of Texas.

In response, Ignition argues that this Court has general jurisdiction over Todd Bresnan and Darrel Young and specific jurisdiction over all of the individual defendants. Ignition asserts that this litigation arises out of activities by Defendants that were aimed at harming Ignition, a citizen of Texas. Ignition submits that Todd Bresnan and Darrel Young knew that Ignition would be harmed in Texas by their actions. Ignition disputes Defendants' assertion that Todd Bresnan's employment agreement expired on December 1, 2014. Ignition argues that Todd Bresnan negotiated his contract with Bill Ricks via telephone and email and Bill Ricks is located in Texas. With regard to venue, Ignition asserts that venue is proper in the Eastern District of Texas because Todd Bresnan contractually agreed to venue in Dallas, Texas. Ignition additionally submits that Defendants have not shown that a transfer is proper under 28 U.S.C. § 1404(a).

Defendants XCite, Todd Bresnan, Jamie Bresnan and Darrel Young also filed a Motion to Dismiss under 12(b)(6) (ECF 39). In the 12(b)(6) motion, Defendants assert that Ignition is barred from bringing this lawsuit because it forfeited its corporate privileges when it failed to pay its franchise taxes to the State of Texas. Defendants state that Ignition's charter was revoked on January 27, 2017 in a tax forfeiture by the Secretary of State. Accordingly, Defendants assert that Ignition does not have the capacity or standing to sue pursuant to FED. R. CIV. P. 17(b).

In response, Ignition agrees that its charter was revoked on January 27, 2017. It asserts, however, that it filed and paid the taxes owed to the State of Texas on June 23, 2017, thereby reviving its standing to sue in federal court.

Defendants argue that Ignition should not be permitted to avoid its tax obligation and then enjoy the benefits of doing business in the State of Texas by later meeting that obligation after a lawsuit has been initiated.  Defendants submit that allowing Ignition to proceed with this lawsuit, when it did not have the capacity to sue at the time the lawsuit was filed, would undermine the goal of promoting franchise tax payment in Texas.  Defendants additionally note that Ignition does not cite any authority for the proposition that the capacity to sue can be applied retroactively if corporate status is revived after a lawsuit is filed.

## I.      Motion to Dismiss Under 12(b)(6)

### A.  *Applicable Law*

When considering a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff.  *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010); *Ballard v. Wall*, 413 F.3d 510, 514 (5th Cir. 2005).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include facts that "raise a right to relief above the speculative level," and into the "realm of plausible liability."  *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 1965–66 n. 5 (2007).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Although detailed factual allegations are not necessary, a "plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Id.* at 1964–65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)).  "[W]here well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

   *B.  Analysis*

   Defendants assert that the complaint should be dismissed for failure to state a claim because Ignition did not have the capacity to sue when the lawsuit was filed.  For a corporation, the capacity to sue is determined by the law under which it was organized.  FED. R. CIV. P. 17(b); *Darby v. Pasadena Police Department*, 939 F.2d 311, 312 (5th Cir. 1991).  Ignition identifies itself as a Texas corporation.  As a result, Texas law determines whether Ignition has the capacity to sue.  A Texas corporation forfeits its corporate privileges if it does not pay its franchise tax or a penalty related to that tax within forty-five days after the date the notice of forfeiture is mailed.  TEX. TAX CODE § 171.251.  Texas law provides that a corporation that has lost its corporate privileges "shall be denied the right to sue or defend in a court of this state."  TEX. TAX CODE § 171.252.

   Here, Ignition does not dispute that its corporate privileges were revoked on January 27, 2017.  When Ignition filed this lawsuit on May 2, 2017, and when it sought injunctive relief from this Court, Ignition did not have the capacity to sue under Texas law or pursuant to the federal procedural rules.  Ignition later sought reinstatement from the Secretary of State and paid its franchise taxes on June 23, 2017.  The payment of delinquent taxes revives the corporation's right to do business and its right to sue.  *See Jones v. Central States, Southeast and Southwest Areas Pension Fund*, 552 S.W.2d 578, 579 (Tex.App.—Dallas, May 26, 1977, no writ).

   Constitutional standing is generally determined as of commencement of the lawsuit.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571–72, 112 S.Ct. 2130 (1992).  A plaintiff typically cannot

cure a jurisdictional defect with events that occurred after suit was filed. *Camsoft Data Sys., Inc. v. S. Elec. Supply, Inc.*, 756 F.3d 327, 337 (5th Cir. 2014). Statutory standing, however, is not jurisdictional and is properly considered pursuant to FED. R. CIV. P. 12(b)(6) instead of 12(b)(1). *See 839 East 19th Street, LP v. Citibank, N.A.*, 2011WL 3510902 (N.D.Tex. Aug. 9, 2011). A corporation regains its ability to sue when it pays its delinquent taxes and may avoid dismissal for lack of standing by showing that its charter and business privileges have been revived. *Id.*; *see also G. Richard Goins Const. Co., Inc. v. S.B. McLaughlin Assocs.*, 930 S.W.2d 124, 128 (Tex.App.—Tyler, 1996, writ denied). As a result of Ignition's regained corporate status, the motion to dismiss should be denied.

## II.   Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue

### A.  Applicable Law

Ignition bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over nonresident defendants. *See Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). The parties do not dispute that Defendants Todd Bresnan, Jamie Bresnan and Darrel Young are not residents of Texas. There are generally two steps in determining whether a federal court may exercise personal jurisdiction over a nonresident defendant: (1) the forum state's long-arm statute must confer personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE § 17.042, extends personal jurisdiction to the permissible limits of the Due Process Clause. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). As a result, only the second step of the inquiry is considered. *McFadin*, 587 F.3d at 759; *Moncrief Oil International Inc. v. OAO Gazprom*, 481

F.3d 309, 311 (5th Cir. 2007); *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.").

The exercise of personal jurisdiction over a nonresident defendant must comport with the requirements of due process. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct 1026 (1987). The Due Process Clause protects an individual's right to be deprived of life, liberty, or property only by the exercise of lawful power. *Giaccio v. Pennsylvania*, 382 U.S. 399, 403, 86 S.Ct. 518 (1966). This includes the notion that the Government may only impose burdens upon individuals in accordance with the valid laws of land. *Id.* "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181 (1985) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160 (1945)).

A nonresident defendant may only be subject to judgment when the defendant has sufficient contacts with the sovereign "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339 (1940)). There must be sufficient "minimum contacts" between a nonresident defendant and the forum for there to be personal jurisdiction in the forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564 (1980) (citing *International Shoe Co.*, 326 U.S. at 316). Consideration is given to whether it is reasonable to require a corporation or individual to defend the suit in this forum. *Id.* at 292. To establish minimum contacts with the forum, a plaintiff must show that the defendant's

conduct and connection with the forum is such that he should reasonably anticipate being haled into court in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958).

In this case, Ignition asserts general and specific jurisdiction. General jurisdiction requires a defendant to have "continuous and systematic contacts" in the forum. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). Establishing general jurisdiction requires a plaintiff to show contacts between the defendant and the forum State that are more extensive and of a better quality than those that are required for specific jurisdiction. *Dalton v. R&W Marine*, 897 F.2d 1359, 1362 (5th Cir. 1990).

A plaintiff may establish specific jurisdiction over a nonresident defendant by showing that the defendant "purposefully directed" his activities at residents of the forum and that the litigation results from injuries that "arise out of or relate to" those activities. *Burger King Corp*., 471 U.S. at 472 (citing *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478 (1984) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872 (1984)). When specific jurisdiction is asserted, due process requires consideration of: (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *McFadin*, 587 F.3d at 759; *see also ITL Intern., Inc. v. Constenia, S.A*., 669 F.3d 493, 498 (5th Cir. 2012). Defendants who " 'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King Corp*., 471 U.S. at 475, 105 S.Ct. at 2183–84 (citing *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929

(1950)).  Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person."  *Id.*

B.  *Analysis*

In response to the motion to dismiss, Ignition asserts that this Court has general jurisdiction over Todd Bresnan and Darrel Young.[2]  Ignition does not, however, identify any continuous and systematic contacts between Todd Bresnan or Darrel Young and Texas.  Neither Bresnan nor Young resides in Texas.  Ignition does not allege any continuous contacts with the State, such as owning property, conducting business, establishing financial accounts or maintaining a mailing address in Texas.  Ignition has not met its burden of establishing a *prima facie* showing of general jurisdiction.

Ignition also argues that there is specific jurisdiction over all of the individual defendants in Texas because their actions were aimed at harming Ignition, a Texas citizen, and they knew that Ignition would be harmed in Texas by their actions.  Notably, however, "the plaintiff cannot be the only link between the defendant and the forum."  *Walden v. Fiore*, ___ U.S. ___, 134 S.Ct. 1115, 1122 (2014).  To comport with due process, a relationship creating minimum contacts must stem from contacts that the defendant himself makes with the forum and must be analyzed by looking at "the defendant's contacts with the forum State, not the defendant's contacts with persons who reside there."  *Id.* (quoting *International Shoe*, 326 U.S. at 319).  Further, whether or not harm was foreseeable in Texas as a result of Ignition's location in Texas is irrelevant to the analysis of whether there is personal jurisdiction over the defendants in Texas.  *Burger King Corp.*, 471 U.S. at 474–75, 105 S.Ct. at 2183.  The foreseeability that is relevant to the analysis is whether it was

---

[2] *See* Plaintiff's Response to Defendants Todd Bresnan, Jamie Bresnan, and Darrel Young's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, ECF 46, at *1.

foreseeable as a result of a defendant's conduct and his connection to the forum State that he should reasonably anticipate being haled into court there.  *Id.* (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. at 567.

It is not enough for Ignition to allege that these nonresident defendants should have known that their alleged conduct in Connecticut would harm a Texas corporation.  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*.  With regard to Defendants Jamie Bresnan and Darrel Young, Ignition does not allege any activities that would establish a *prima facie* showing of minimum contacts with Texas.  All of the alleged acts occurred in Connecticut.

Turning to Defendant Todd Bresnan, Ignition asserts that his employment agreement provides a basis for personal jurisdiction and includes a forum selection clause for federal or state court in Dallas, Texas.  Where a nonresident defendant enters into contractual obligations with a citizen of the forum State, thereby creating a relationship and obligations with regard to that citizen, he becomes "subject to regulation and sanctions in the other State for the consequences of [his] activities.  *Id.* at 473 (citing *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929 (1950); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 222–23, 78 S.Ct. 199, 200–201 (1957)).  Defendant's argument that the agreement expired in 2014 goes toward the merits of Ignition's breach of contract claim; not whether Todd Bresnan purposefully directed his activities toward a forum resident.  The agreement provides Texas as the choice of law and Dallas County, Texas or the Northern District of Texas as the location for the resolution of disputes arising out of the agreement.[3]  The forum selection and choice of law clauses in the agreement gave Todd

---

[3] *See* Complaint for Injunctive Relief and Damages, ECF 1-8, at *9–10 (Todd Bresnan Employment Contract).

Bresnan foreseeability that he could be "haled into court" in Texas.  The claims against Todd Bresnan arise out of his alleged duties pursuant to that agreement.  While these clauses, standing alone, do not direct a finding a personal jurisdiction, they do support a finding of personal jurisdiction.  *See Rimkus Consulting Group, Inc. v. Balentine*, 693 F.Supp.2d 681, 687 (S.D.Tex. Feb. 16, 2010).  Ignition has met his burden of alleging facts to support a *prima facie* showing of personal jurisdiction for Todd Bresnan and he has not shown that the exercise of jurisdiction in Texas is unfair and unreasonable.

Alternatively, Todd Bresnan argues that the claims against him should be dismissed for improper venue.  Pursuant to 28 U.S.C. § 1391(b), a civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.  Although Todd Bresnan does not reside in Texas and the alleged acts by the individual defendants giving rise to this lawsuit occurred in Connecticut, as discussed above Todd Bresnan is subject to personal jurisdiction in this district.  Defendants argue, however, that § 1391(b)(3) is inapplicable because there is a district where venue is appropriate under § 1391(b)(2), the District of Connecticut.  Defendants' motion, however, addresses only the claims against the individual defendants.  Defendant XCite is not a party to the motion.  According to the complaint, XCite is a Delaware corporation with its principal place of business in Chicago, Illinois. The Court does not have sufficient facts to determine whether § 1391(b)(2) is applicable.  As a result, Defendants have not shown that dismissal for improper venue is appropriate.

It is noted that Ignition's response addresses whether a transfer of venue is appropriate pursuant to 28 U.S.C. § 1404.  Defendant's motion does not request a transfer of venue pursuant to § 1404.

In sum, Ignition has not alleged facts sufficient to support a *prima facie* showing of general jurisdiction for any of the individual defendants or specific jurisdiction for Jamie Bresnan or Darrel Young.  Ignition has, however, alleged sufficient facts to support a *prima facie* showing of specific jurisdiction for Todd Bresnan.  Defendants have not shown that dismissal for improper venue is appropriate.  The motion to dismiss should be denied as to Todd Bresnan and granted in all other aspects.

### III.    Motion for Temporary Restraining Order

#### A.  Applicable Law

The prerequisites for a temporary restraining order and a preliminary injunction are: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs any damage that the injunction may cause for the nonmovant; and (4) that the injunction will not disserve the public interest.  *Affiliated Prof'l Home Health Care Agency v. Shalala,* 164 F.3d 282, 285 (5th Cir. 1999); *see also Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).  To establish irreparable injury, a movant must show "that if the district court denied the grant of a preliminary injunction, irreparable harm would result." *Janvey v. Alguire*, 628 F.3d 164, 175 (5th Cir. 2010).  Injuries are irreparable only when they "cannot be undone through monetary remedies." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008) (citation omitted).

Since a temporary restraining order or a preliminary injunction is such an extraordinary, and perhaps drastic remedy, one is not granted unless the movant clearly carries the onerous burden of persuasion as to all of the elements. *United States v. Jefferson* County, 720 F.2d 1511, 1519 (5th Cir. 1983). In other words, the movant has a cumulative burden to prove each of the four enumerated elements. *Mississippi Power & Light Co.*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark v. Prichard*, 812 F.2d at 993. A preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed2d 249 (2008). The decision of whether to grant or deny a temporary restraining order or a preliminary injunction is left to the sound discretion of the trial court. *Mississippi Power & Light Co.*, 760 F.2d at 621.

B. *Analysis*

Ignition amended its motion at the hearing to request a preliminary injunction instead of a temporary restraining order. Ignition focuses its requested relief on enjoining Todd Bresnan and Darrel Young from working on the accounts that originated with Ideal Lot.

Ignition has not shown a substantial likelihood that it will prevail on the merits. Ignition seeks injunctive relief as to its claims for breach of contract and misappropriation of trade secrets. As set forth above, Ignition has not shown that this Court has personal jurisdiction over Darrel Young. Additionally, Defendants produced evidence showing that the only contract at issue—Todd Bresnan's employment agreement—expired, together with the non-compete and non-solicitation terms of the agreement. By its express terms, the employment agreement, dated November 14, 2013, terminates after one year "unless the term is extended by mutual agreement of the parties in writing."[4] The agreement further provides that the non-competition and non-

---

[4] *See* Complaint for Injunctive Relief and Damages, ECF 1-8, at *7 (Todd Bresnan Employment Contract).

solicitation terms expire two years after termination of the agreement.[5]  The actions giving rise to this lawsuit occurred in January and February of 2017.  Ignition argues that the agreement renewed as long as Todd Bresnan continued working for Ignition.  At the hearing, however, Ignition could not locate anything in the agreement that provides for renewal stemming from continued employment instead of written agreement.

Additionally, the customer list and customer information identified by Ignition do not appear to be trade secrets under TUSTA.  Succeeding on a claim of misappropriation of trade secrets requires showing: (1) existence of a trade secret, (2) breach of a confidential relationship or improper discovery of a trade secret, (3) use of the trade secret, and (4) damages.  *Moncrief Oil Int'l v. OAO Gazprom*, 332 S.W. 3d 1, 14 (Tex.App.—Fort Worth 2010), pet. filed).  Six relevant, non-exclusive, criteria for a trade secret include: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business, (3) the extent of measures taken to safeguard the secrecy of the information, (4) the value of the information to Plaintiff and its competitors, (5) the amount of effort or money expended in developing the information, and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.  *Gen. Universal Sys. Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004).  Here, a list of the car dealerships in the Connecticut market is easily obtained with public information and identifying which dealerships are clients of Ignition's is also easily ascertained. As to Ignition's pricing information, Defendant's evidence that its customers pay higher prices for its services purports to show that Ignition's pricing information was not used by Defendants.

---

[5] *Id*. at *5.

Even if the Court were to assume, *arguendo*, that Ignition is likely to succeed on the merits of its claims, it must establish each of the four enumerated elements for injunctive relief. *Mississippi Power & Light Co*., 760 F.2d at 621; *Clark*, 812 F.2d at 993.  Here, Ignition has not shown a substantial threat of irreparable injury.  Defendants have already acquired the customers that Ignition believes resulted from Defendants' alleged misconduct.  At the hearing, Ignition agreed that it could solicit the lost customers, but the customers want to do business with Todd Bresnan.  Todd Bresnan brought the clients with him when he sold Ideal Lot to Ignition and the customers left when Todd Bresnan left Ignition's business.  Ignition's loss, if any, can be remedied by a money judgment.  In addition, Ignition has not shown that its threatened injury outweighs the threatened harm to Defendants.  If preliminary injunctive relief is granted, there is no reason to believe that the customers that left Ignition will return.  A preliminary injunction will only operate to stop Todd Bresnan and XCite from conducting business with those customers.  Finally, Ignition has not shown that a preliminary injunction will serve the public interest.

For these reasons, Ignition has not met its burden of establishing all of the essential elements necessary for a preliminary injunction.  It has not made a clear showing that it is entitled to injunctive relief and the motion should be denied.

## **RECOMMENDATION**

It is accordingly recommended that Plaintiff's Amended Motion for Temporary Restraining Order (ECF 10) be **DENIED**.  It is further recommended that Defendants Todd Bresnan, Jamie Bresnan, and Darrel Young's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (ECF 38) be **GRANTED** in part and **DENIED** in part.  The motion should be denied as to personal jurisdiction for Todd Bresnan and granted in all other aspects.  Finally, it

is recommended that Defendant XCite, Todd Bresnan, Jamie Bresnan, and Darrel Young's Motion to Dismiss Under 12(b)(6) (ECF 39) be **DENIED**.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court.  *Douglass v. United Servs. Auto. Assn*., 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 2nd day of March, 2018.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE